### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| **Yaseen K. Odeh,** | ) | Case No. 09 B 03275 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| **Vivian Sierra Birriel, individually** | ) | |
| **and as independent administrator** | ) | |
| **of the Estate of Tony Birriel,** | ) | |
| **deceased,** | ) | Adversary No. 09 A 01094 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **Yaseen K. Odeh,** | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OF DECISION

The adversary proceeding now before the court arises in the Chapter 7 bankruptcy case of Yaseen Odeh, a medical doctor. The proceeding was brought by Vivian Birriel, both individually and as the administrator of the estate of her brother Tony Birriel. Vivian's adversary complaint alleges (1) that, after committing medical malpractice resulting in Tony's death, Odeh attempted to cover up his malpractice by altering Tony's medical records, and (2) that the cover-up generated a nondischargeable debt under § 523(a)(4), and (6) of the Bankruptcy Code (Title 11, U.S.C.). Odeh has moved to dismiss the complaint under Federal Rule of Bankruptcy Procedure 7012(b)—which makes Federal Rule of Civil Procedure 12(b)(6) applicable to adversary proceedings—for failure to state a claim on which relief can be granted.

As discussed below, the complaint fails to state a claim under § 523(a)(4) for fraud while acting in a fiduciary capacity because it does not allege an essential element under that provision—that the fraud involved misuse of property. However, the complaint does state a claim under § 523(a)(6) for a willful and malicious injury by alleging that Odeh, in violation of his fiduciary duties under Illinois law, altered Tony's medical records knowing that the alteration would harm Tony's estate. Accordingly, the motion will be granted in part and denied in part.

### Jurisdiction

Under 28 U.S.C. § 1334(a), the federal district courts have "original and exclusive jurisdiction" of all cases under the Bankruptcy Code. However, the district courts may refer bankruptcy cases to the bankruptcy judges for their districts under 28 U.S.C. § 157(a), and the District Court for the Northern District of Illinois has made such a reference through its Internal Operating Procedure 15(a). When presiding over a referred case, a bankruptcy judge has jurisdiction under 28 U.S.C. § 157(b)(1) to enter appropriate orders and judgments as to core proceedings in the case. Proceedings to determine the dischargeability of debts are core proceedings. 28 U.S.C. § 157(b)(2)(I).

### Allegations of the Complaint

A motion to dismiss under Rule 12(b)(6) accepts the plaintiff's factual assertions as true and requires all reasonable inferences to be drawn in the plaintiff's favor. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). Vivian's adversary complaint alleges the following facts. (*See* Adv. Docket No. 1, the "Complaint.") !

On April 3, 2004, Tony was admitted to Norwegian American Hospital, where Odeh was the admitting physician. (*Id.* ¶¶ 6-8.) From April 13 through April 15, while Tony was a patient at the hospital, he suffered myocardial ischemia and cardiac arrest. (*Id.* ¶ 10.) The

2

hospital did not have the facilities to treat this condition, and so, on April 15, Tony was transferred to another hospital.  (*Id.* ¶¶ 12-13.)  He died three days later from complications of his prior myocardial injury. (*Id.* ¶ 14.)  During the period when Tony was receiving treatment at Norwegian American Hospital, General Star Indemnity Company provided Odeh with malpractice insurance.  (*Id.* ¶ 16.)

In August 2004, about four months after Tony's death, Odeh sought to avoid malpractice liability in connection with his treatment of Tony by altering Tony's medical records to present a false description of the treatment.  (*Id.* ¶¶ 18-19.)  The alteration would prevent Tony's estate from obtaining a full recovery for Odeh's malpractice, either because, if the alteration were not discovered, Vivian would be unable to establish the malpractice, or because, if the alteration were discovered, Odeh's malpractice insurer would be able to deny coverage. (*Id.* ¶ 21.)

On June 28, 2005, Vivian commenced a malpractice action against Odeh in the Circuit Court of Cook County, Illinois, seeking damages under various theories.  (*Id.* ¶ 19.)  During a deposition in the state court action, Odeh admitted falsifying Tony's medical records.  (*Id.* ¶ 20.)  Thereafter, based on the falsification, General Star filed an action in the United States District Court seeking a declaration that it has no duty to defend or indemnify Odeh.  (*Id.* ¶ 22.)

Vivian's complaint in this court alleges that Odeh breached his fiduciary duties to Tony by altering the medical records, and that this breach damaged her by, among other things, causing her to incur the costs of investigating Odeh's attempted cover-up and potentially preventing her from recovering any insurance proceeds from General Star.  Count I seeks to have this debt held nondischargeable under § 523(a)(4) of the Bankruptcy Code on the ground that Odeh committed fraud while acting in a fiduciary capacity, and Count II asserts that the debt

3

should be nondischargeable pursuant to § 523(a)(6) as arising from a willful and malicious injury.

## Conclusions of Law

Section 727(a) of the Bankruptcy Code makes the pre-bankruptcy debts of an individual Chapter 7 debtor like Odeh subject to a broad discharge, defined by § 524(a) of the Code. However, some types of debt—those listed in § 523(a)—are excepted from the discharge. Establishing an exception to discharge under § 523(a) is a two-part exercise. First, the creditor must prove a "debt" under applicable non-bankruptcy law.[1] Second, the creditor must show that the debt falls within one of the categories listed in § 523(a). *See Wish Acquisition, LLC v. Salvino (In re Salvino)*, 373 B.R. 578, 584 (Bankr. N.D. Ill. 2007). Odeh's motion to dismiss asserts that Vivian's complaint satisfies neither of these requirements.

The Supreme Court recently redefined the standard for surviving a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure: "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ascroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010). Under this standard, "'a plaintiff must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief.'" *Reger*, 592 F.3d at 764 (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008)).

---

[1] "Debt" is defined in § 101(12) of the Bankruptcy Code as "liability on a claim," and "claim" under § 101(5) includes a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated . . . disputed [or] undisputed." Thus, a pre-judgment cause of action for damages is a "debt." *See In re Knight*, 55 F.3d 231, 234 (7th Cir. 1995) (disputed claims are debts).

4

In this case, Vivian's complaint provides fair notice of her claim that Odeh's breach of fiduciary duty gives rise to a nondischargeable debt, and it plausibly alleges facts supporting both elements of a nondischargeability claim: a debt under applicable non-bankruptcy law and nondischargeability under § 523(a)(6).

*1. Debt under applicable non-bankruptcy law*

Vivian asserts that Odeh's alteration of medical records constituted a breach of fiduciary duty under Illinois law and that this breach inflicted an injury upon her. Illinois law generally recognizes a cause of action for damages arising from a breach of fiduciary duty. *See, e.g., Doe v. Roe,* 289 Ill. App. 3d 116, 123, 681 N.E.2d 640, 646 (1st Dist. 1997) (upholding a client's breach of fiduciary duty claim against her attorney). This cause of action has three elements: "[1] that a fiduciary duty exists, [2] that the fiduciary duty was breached, and [3] that such breach proximately caused the injury of which the plaintiff complains." *Neade v. Portes,* 193 Ill. 2d 433, 444, 739 N.E.2d 496, 502 (2000) (citing *Martin v. Heinold Commodities, Inc.,* 163 Ill. 2d 33, 53, 643 N.E.2d 734, 744 (1994)). The facts alleged in the adversary complaint meet these requirements.

*(a) Claim for a physician's breach of fiduciary duty under Illinois law*

There appears to be no reported Illinois decision in which a physician has been found subject to a claim for breach of fiduciary duty. Indeed, in *Neade v. Portes*, the Illinois Supreme Court declined to approve such a cause of action, holding that the claim for breach of fiduciary duty in that case would be duplicative of a traditional medical malpractice claim. *Neade*, 193 Ill. 2d at 440-450, 739 N.E.2d at 500-06. Odeh argues that *Neade* makes it impossible for Vivian to assert a debt for breach of fiduciary duty based on his alleged record alteration.

*Neade*, however, is not applicable here. In determining that the plaintiff's claims for breach of fiduciary duty and malpractice were duplicative, the Illinois Supreme Court in

5

*Neade* examined the "operative facts together with the injury." *Id.* at 443, 739 N.E.2d at 502. The court found that the same asserted facts—that the defendant withheld treatment that another physician would have provided—gave rise to the plaintiff's claims for both medical malpractice and breach of fiduciary duty. *See id.* at 444-45, 739 N.E.2d at 502-03.[2] The central issue for both claims was whether the defendant complied with the applicable standard of medical care. *Id.* The plaintiff also complained of identical injuries and sought identical damages for each claim. *Id.* at 445-46, 739 N.E.2d at 503. Accordingly, the Supreme Court held that, "under the facts in the case at bar," the breach of fiduciary duty claim duplicated the medical negligence claim and "the injuries suffered by plaintiff as a result of [the defendant's] medical care are sufficiently addressed by application of traditional concepts of negligence." *Id.* at 450, 739 N.E.2d at 505-06. Finally, the Supreme Court distinguished other cases in which fiduciary duty claims were allowed to proceed against professionals such as attorneys on the ground that "the plaintiffs in those cases did not bring causes of action sounding in both breach of fiduciary duty and negligence." 193 Ill. 2d at 449, 739 N.E.2d at 505.

Here, in contrast, the adversary complaint alleges a claim that is distinct from medical malpractice. Vivian's malpractice complaint in the state court action alleges that the medical services Odeh provided failed to meet the applicable standard of care, resulting in Tony's death. Her adversary complaint in bankruptcy, on the other hand, alleges that Odeh's act of altering Tony's medical records—four months after Tony's death—was a separate breach of his fiduciary duty. In this case, unlike *Neade*, proving that Odeh caused Tony's death by rendering deficient medical treatment will not establish that Odeh breached his fiduciary duties by altering medical records. Similarly, showing that Odeh falsified Tony's records will not es-

---

[2] The complaint in *Neade* alleged a breach of fiduciary duty based on a physician's failure to inform the patient of a financial incentive offered by the patient's HMO that encouraged the physician not to provide particular treatment. The Supreme Court found that this allegation "boiled down" to an assertion that proper medical care required that the treatment be provided. *Id.*

6

tablish that Odeh failed to provide adequate medical services. The facts giving rise to the two claims are distinct.

Vivian also requests different damages in the breach of fiduciary claim. In the malpractice action, she seeks recovery for losses stemming from Tony's death. In the adversary proceeding, she asserts that Odeh's falsification of records caused her to incur both costs associated with investigating Odeh's cover-up and the potential loss of the insurance proceeds that would otherwise be available.

Finally, Vivian's breach of fiduciary duty claim is qualitatively different from an action for medical malpractice. Because inaccurate records may compromise ongoing or future health care, medical malpractice can, in some circumstances, be based on falsification of records. *See, e.g., In re Jascalevich*, 182 N.J. Super. 455, 471, 442 A.2d 635, 644-45 (App. Div. 1982). However, Odeh is not alleged to have altered records in connection with any ongoing medical treatment, nor could the alterations have affected any future care given to Tony. Rather, after Tony's death, the only harm that Tony (or, more precisely, his estate) could have faced was purely financial. At its core, Vivian's adversary complaint alleges that Odeh abused a position of power and confidence in a manner quite distinct from the quality of the medical services he rendered, and so it may be treated as an action for breach of fiduciary duty under Illinois law.

*(b) Allegations of the elements of a breach of fiduciary duty claim*

Each of the three elements that Illinois law requires for a breach of fiduciary duty—existence of the duty, breach, and resulting damages—are sufficiently alleged in the adversary complaint and therefore it satisfies the "debt" element of nondischargeability under § 523(a).

First, a fiduciary duty is established by the nature of the relationship alleged between Odeh and Tony. Illinois has long recognized a fiduciary relationship between a physician and patient. *See Neade*, 193 Ill. 2d at 440, 739 N.E.2d at 500; *Witherell v. Weimer*, 85 Ill. 2d 146,

7

159-60, 421 N.E.2d 869, 876 (1981); *Zeigler v. Illinois Trust & Sav. Bank*, 245 Ill. 180, 196, 91 N.E. 1041, 1047 (1910).

Odeh attempts to avoid this conclusion by contending that maintaining patient records is a duty only of hospitals—not individual physicians—and that, in any event, his fiduciary duty to Tony ceased when Tony died. Neither of these suggested limitations on fiduciary duty is persuasive. It is true that Illinois generally imposes the duty of maintaining patient records on hospitals, rather than physicians. *See* 225 ILCS 60/1, *et seq.* (2008); *Fox v. Cohen*, 84 Ill. App. 3d 744, 750, 406 N.E.2d 178, 182 (1st Dist. 1980). Except in the context of a statute involving a public aid program, no Illinois court has extended the duty of maintaining patient records to physicians.[3] However, the absence of a physician's affirmative duty to maintain patient records does not translate into a license to falsify them. A fiduciary has an overriding duty to "refrain from 'seeking a selfish benefit during the relationship.'" *Neade*, 193 Ill. 2d at 440, 739 N.E.2d at 500 (quoting *Kurtz v. Solomon*, 275 Ill. App. 3d 643, 651, 656 N.E.2d 184, 191 (1st Dist. 1995)). The authorities are legion that physicians have an obligation to act honestly and refrain from putting their personal financial interests above the welfare of their patients.[4]

---

[3] *See Lebajo v. Dep't of Public Aid*, 210 Ill. App. 3d 263, 269-71, 569 N.E. 70, 75 (1st Dist. 1991) (holding that § 5-5 of the Illinois Public Aid Code, 305 ILCS 5/1, *et seq.*, imposes a legal obligation on participants in the public aid program to maintain patient records).

[4] *See Petrillo v. Syntex Labs., Inc.,* 148 Ill. App. 3d 581, 594, 499 N.E.2d 952, 961 (1986)) ("There is an implied promise, arising when the physician begins treating the patient, that the physician will refrain from engaging in conduct that is inconsistent with the 'good faith' required of a fiduciary. The patient should, we believe, be able to trust that the physician will act in the best interests of the patient thereby protecting the sanctity of the physician-patient relationship."); *Fure v. Sherman Hosp.*, 64 Ill. App. 3d 259, 263, 380 N.E.2d 1376, 1380 (2d Dist. 1978) ("[T]he doctor has a fiduciary relationship to his patient, not to deceive him or withhold vital information from him. . . ."); American Medical Association, Code Of Medical Ethics § 8.03 (1998) ("Under no circumstances may physicians place their own financial interests above the welfare of their patients. . . . If a conflict develops between the physician's financial interest and the physician's responsibility to the patient, the conflict must be resolved to the patient's benefit.").

8

Nothing in Illinois law suggests that this duty would not prohibit a deliberate falsification of a patient's records to advance the physician's own financial interests.

Odeh's contention that his fiduciary duties ended with Tony's death also is unpersuasive. In Illinois, the physician-patient privilege, codified at § 8-802 of the Illinois Code of Civil Procedure, extends a physician's duty to maintain confidentiality beyond the patient's death:

> No physician or surgeon shall be permitted to disclose any information he or she may have acquired in attending any patient in a professional character . . . except only . . . in case of his or her death or disability, [with the expressed consent] of his or her personal representative or other person authorized to sue for personal injury or of the beneficiary of an insurance policy on his or her life, health, or physical condition. . . .

725 ILCS 5/8-802 (2008); *see also Tomczak v. Ingalls Mem'l Hosp.*, 359 Ill. App. 3d 448, 452, 834 N.E.2d 549, 553 (1st Dist. 2005) (discussing the privilege generally). Thus, as reflected in the statutory duty of confidentiality, Illinois physicians continue to be fiduciaries after the death of their clients. *See also* American Medical Association, Code of Medical Ethics § 7.01 (1998) ("Physicians should do everything within reason to serve the paramount interest of current *and former* patients.") (emphasis added).[5] Moreover, the practical effect of adopting Odeh's position cannot be ignored: physicians would have to refrain from falsifying patient records while their patients were alive, but, if a patient died as a result of a physician's malpractice, the physician would be free to cover up the malpractice with falsified records. It is difficult to envision any court accepting that proposition.[6]

---

[5] Similarly, the United States Supreme Court has held that that the attorney-client privilege must extend posthumously to ensure that clients will communicate freely with their counsel, *see Swindler & Berlin v. United States*, 524 U.S. 399 (1998), and the Court has characterized this ongoing obligation to maintain confidentiality as reflecting an attorney's continuing fiduciary duty. *See Mickens v. Taylor*, 535 U.S. 162, 184 (2002) ("[A] lawyer's fiduciary relationship with his deceased client survives the client's death.").

[6] In *Fure v. Sherman Hospital*, 64 Ill. App. 3d 259, 380 N.E.2d 1376 (2d Dist. 1978), the Illinois Appellate Court held that hospitals and physicians do not have a duty to inform the representative of a deceased patient's estate about questionable medical treatment. 64 Ill. App. 3d at 253; 380 N.E.2d at 1380 ("[W]hile the doctor has a fiduciary relationship to his pa-

Second, the complaint clearly alleges a breach of Odeh's fiduciary duty to Tony. The complaint alleges that Odeh altered Tony's medical records to protect Odeh's personal financial interest in avoiding malpractice liability at the expense of his patient's interest, violating a duty at the core of the fiduciary relationship. *See Petrillo*, 148 Ill. App. 3d at 594, 499 N.E.2d at 961.

Third, the complaint alleges damages flowing from Odeh's breach. Odeh argues that the only damage to Tony's estate could be from the alleged malpractice, not the alleged falsification of medical records. However, Illinois statutes "confer an interest in [a liability insurance] policy on every member of the public that is negligently injured" by the insured. *People ex rel. Terry v. Fisher*, 12 Ill. 2d 231, 237, 145 N.E.2d 588, 592 (1957). In particular, the court in *Terry* cited § 388 of the Illinois Insurance Code (now codified at 215 ILCS 5/388 (2008)), which requires liability policies to grant injured parties a right of action against the insurer if a judgment against the insured cannot be satisfied.[7]

Accordingly, if Odeh committed malpractice, Tony's estate would have acquired a right to recover under Odeh's malpractice insurance policy, and the loss of this right is distinct from the ability to collect directly from Odeh. The allegation, moreover, is quite plausible. Odeh, after all, filed a Chapter 7 bankruptcy case, making it likely, if not almost certain, that he will

---

tient, not to deceive him or withhold vital information from him, we think this fiduciary aspect does not extend to a deceased patient's legal representative to the extent that the doctor is required to charge himself with professional negligence where he is conscious that his treatment was mistaken or incomplete, in order to assist such legal representative in the furtherance of an action against the doctor."). However, the court recognized a distinction between requiring physicians to disclose information and prohibiting them from engaging in active deceit: "The mere failure to disclose a possibly questionable diagnosis or course of treatment to a third party representing the deceased patient is, we think, a far cry from fraudulent concealment of an actual known fact or circumstance . . . ." *Id*. Here, Odeh's alleged falsification of records violates the duty implicitly acknowledged in *Fure*.

[7] *See also In re Allied Products Corp.*, 288 B.R. 533, 535-36 (Bankr. N.D. Ill. 2003), *aff'd*, No. 03 C 1361, 2004 WL 635212, at *3 (N.D. Ill. Mar. 31, 2004) (holding that the right of injured parties to enforce liability policy coverage under Illinois law is entitled to protection in bankruptcy).

not be able to satisfy personally a substantial judgment for medical malpractice, and that the insurance claim will be the only significant source of recovery. To the extent Odeh's alteration of Tony's records causes Vivian to expend resources to defend the estate's interest in the policy, and even more to the extent the alteration nullifies the insurance coverage, Tony's estate will have suffered damages proximately caused by the alteration.

  2. *Allegations under 11 U.S.C. § 523(a)(4) and (6)*

With the existence of a debt under state law adequately alleged, the remaining question is whether the complaint asserts facts sufficient to make the debt nondischargeable under § 523(a)(4) or (6) of the Bankruptcy Code.

  *a. Section 523(a)(4)*

Section 523(a)(4) of the Bankruptcy Code excepts from discharge any debt arising from "fraud or defalcation while acting in a fiduciary capacity." 11 U.S.C. § 523(a)(4). This language has its source in § 17(a)(4) of the Bankruptcy Act of 1898, which similarly denied discharge to debts "created by . . . fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in any fiduciary capacity." Bankruptcy Act of 1898, § 17(a)(4), 52 Stat. 840, 851, formerly codified at 11 U.S.C. § 35(a)(4) (repealed 1978). The Supreme Court interpreted Section 17(a)(4) in *Davis v. Aetna Acceptance Co.*, 293 U.S. 328 (1934), holding that it "'speaks of technical trusts, and not those which the law implies from contract.'" *Id.* at 333 (quoting *Chapman v. Forsyth*, 43 U.S. (2 How.) 202, 208 (1844), which dealt with similar language in an earlier bankruptcy law). Following *Davis*, courts have generally construed "fraud or defalcation while acting in a fiduciary capacity" in § 523(a)(4) as applying only in circumstances akin to breach of a formal trust—that is, to debts involving both property that could be the res of a trust and a relationship between the debtor and creditor that establishes a fiduciary relationship encompassing that property. *See Follet Higher Educ. Group, Inc. v. Berman*, 427 B.R. 432, 436 (N.D. Ill. 2010) (citing *In re Marchiando*, 13 F.3d 1111, 1116 (7th Cir.

11

1994) for the rule that "there must be a 'res' in existence before the designated fiduciary relationship arises"), *appeal pending*, No. 10-1882 (7th Cir.); *cf. In re Garver*, 116 F.3d 176, 180 (6th Cir. 1997) ("The mere failure to meet an obligation while acting in a fiduciary capacity simply does not rise to the level of defalcation; an express or technical trust must also be present.").

The Seventh Circuit takes a broader view than other courts of the circumstances that can give rise to fiduciary duties under § 523(a)(4) with respect to a res, holding that a fiduciary relationship exists if there is "a difference in knowledge or power between fiduciary and principal which . . . gives the former a position of ascendancy over the latter." *In re Frain*, 230 F.3d 1014, 1017 (7th Cir. 2000) (quoting *Marchiando*, 13 F.3d at 1116). Under this standard, Vivian's complaint adequately alleges that Odeh owed fiduciary duties to Tony and his estate. Physicians, like attorneys, are in a position of substantially greater knowledge than their patients.[8]

Nevertheless, Vivian cannot maintain a § 523(a)(4) claim because she alleges no facts establishing a res to which Odeh's fiduciary duties would apply. There is no allegation that Tony entrusted any funds to Odeh or that Odeh attempted to gain control over any of Tony's property. Indeed, there is no allegation of any financial relationship between Odeh and Tony, and so the alleged facts cannot give rise to the type of fraud or defalcation that would sustain a claim under § 523(a)(4). Accordingly, Count I of the complaint, based on § 523(a)(4), fails to state a claim on which relief can be granted.

---

[8] Several decisions from courts in other circuits hold that physicians are not fiduciaries within the scope of § 523(a)(4) on the grounds that there were no express trusts at issue and relevant state law did not include any statutory provisions imposing duties on physicians to act in a trustee-like capacity. *See Lee-Benner v. Gergely (In re Gergely)*, 110 F.3d 1448, 1451 (9th Cir. 1997); *Fox v. Karlin (In re Karlin)*, 112 B.R. 319, 322 (B.A.P. 9th Cir. 1989), *aff'd* 940 F.2d 1534 (9th Cir. 1991); *Hanft v. Church (In re Hanft)*, 315 B.R. 617, 623-24 (S.D. Fla. 2002); *Caccamo v. Pouliot (In re Pouliot)*, 196 B.R. 641, 650-51 (Bankr. S.D. Fla. 1996); *Stanley v. Cole (In re Cole)*, 136 B.R. 453, 457 (Bankr. N.D. Tex. 1992). These decisions, however, did not apply the Seventh Circuit's more expansive view of fiduciaries.

Case 09-01094   Doc 37   Filed 07/06/10   Entered 07/06/10 16:29:51   Desc Main
            Document      Page 13 of 14

      *b. Section 523(a)(6)*

      Section 523(a)(6) excepts from discharge debts arising from a "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). As the Supreme Court noted in *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998), the phrase "willful and malicious injury" is one that "triggers in the lawyer's mind the category 'intentional torts;'" accordingly, § 523(a)(6) is best read as limited to debts resulting from tortious conduct. *WISH Acquisition, L.L.C. v. Salvino (In re Salvino),* 373 B.R. 578, 588 (Bankr. N.D. Ill. 2007). To state a claim under § 523(a)(6), then, a creditor must allege (1) a tortious injury, (2) committed willfully, and (3) committed maliciously. *See Baker Dev. Corp. v. Mulder (In re Mulder)*, 307 B.R. 637, 641 (Bankr. N.D. Ill. 2004) (setting out the three elements of injury, willfulness, and malice).

      Vivian's adversary complaint alleges each of these three elements. First, the complaint alleges a tortious injury—damages arising from, among other things, the costs of investigating and discovering Odeh's attempted cover-up and the potential loss of insurance proceeds—caused by Odeh's violation of his fiduciary duties.

      Second, the complaint alleges that the injury was willful. "Willfulness," in § 523(a)(4) requires "a deliberate or intentional *injury*, not merely . . . a deliberate or intentional *act* that leads to injury." *Geiger*, 523 U.S. at 61 (emphasis in original); *see also Colemichael Invs., L.L.C. v. Burke (In re Burke),* 398 B.R. 608, 625-26 (Bankr. N.D. Ill. 2008) ("[A] creditor must plead . . . that the debtor actually intended to harm him and not merely that the debtor acted intentionally and he was thus harmed."). The complaint here asserts that Odeh's purpose in altering the records was a deliberate injury—intended to cover up Odeh's malpractice and prevent any recovery by Tony's estate. Moreover, Vivian plausibly alleges that Odeh knew that even if alteration were discovered, Tony's estate would incur expense in discovering it and be exposed to the risk that the alteration would eliminate insurance recovery.

Finally, the complaint satisfies the requirement of maliciousness—a "conscious disregard of one's duties or without just cause or excuse," *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir. 1994) (internal quotations omitted)—in alleging that Odeh's intentional breach of fiduciary duties regarding medical records was without any justification.[9]

Accordingly, Count II of the complaint states a claim under § 523(a)(6).

### Conclusion

For the reasons stated above, Odeh's motion to dismiss will be granted as to Count I of the complaint and denied as to Count II. A separate order will be entered to this effect.

Dated: July 6, 2010

Eugene R. Wedoff
United States Bankruptcy Judge

---

[9] An act taken with the intent to cause harm will almost always be inherently wrongful and without justification or excuse, and several courts have observed that the willfulness and maliciousness inquiries largely overlap. *See, e.g., Transamerica Commercial Fin. Corp. v. Littleton (In re Littleton)*, 942 F.2d 551, 554 (9th Cir. 1991) (per curiam) ("[M]alice may be inferred from the nature of the wrongful act."); *Sparks v. Adams (In re Adams)*, 147 B.R. 407, 412 n.9 (Bankr. W.D. Mich. 1992) (quoting Jeff Weinberg, Comment, *Accidental "Willful and Malicious Injury": The Intoxicated Driver and Section 523(a)(6)*, 1 Bankr. Dev. J. 135, 145 n. 48 (1984)) ("[T]he distinction between . . . 'willful' . . . and 'malicious' is unclear because malicious acts are necessarily willful. In other words, deciding whether an act is malicious must involve a determination of willfulness. Confusion arises as the cases refer to 'willful' and 'malicious' as two separate categories, ignoring the fact that malicious acts are a subset of willful acts."). Nevertheless, since the statute is phrased in the conjunctive, courts typically make separate findings for both willfulness and maliciousness, even if the findings are duplicative. *See, e.g., Barboza v. New From, Inc. (In re Barboza)*, 545 F.3d 702, 711-12 (9th Cir. 2008) (recognizing that "there may be some overlap between the test for 'willfulness' and the test for 'malice,'" but requiring bankruptcy court to make separate findings for each test on remand).